**UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

------------------------------------------------------------------------------- X

JUAN RODRIGUEZ,

                                        Plaintiff,

  -against-

THE UNITED STATES OF AMERICA,                                        **COMPLAINT**

                                        Defendant.

------------------------------------------------------------------------------- X

Plaintiff Juan Rodriguez ("Mr. Rodriguez" or "Plaintiff"), by his attorney, Joseph G. Price, Esq., as and for his complaint against Defendant United States of America ("Defendant") alleges as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.      This is a personal injury action in which Plaintiff seeks redress under the Federal Torts Claim Act for injuries he suffered as a result of the negligent and wrongful acts of Defendant, through its agency, the Federal Bureau of Prisons, whose employees failed to keep equipment and the premises at the Schuykill Federal Correctional Institution ("FCI Schuykill") free and clear of defects and in good repair.

2.      On March 31, 2020, Plaintiff was being held in custody at FCI Schuykill when prison officials ordered him to push a lock box cart filled with meal trays to another area of the prison. Prison officials knew that prisoners were not supposed to transport meals to other areas of the prison and that a food cart, and not a lock box cart, was required to safely transport the meal trays. Prison officials also knew that the particular lock box cart Plaintiff was ordered to use had defective wheels and that the route Plaintiff was required to use included an unsafe ramp that contained a pothole in it.

3.     Corrections officials disregarded Plaintiff's protests that it was unsafe to use the lock box cart to transport the food trays and required Plaintiff to comply with their order. When Plaintiff reached the unsafe ramp, the wheels of the lock box cart began to spin erratically, and Plaintiff was unable to control the speed or direction of the defective lock box cart. The lock box cart then veered into the pothole on the ramp which caused it to tip over and fall onto Plaintiff's ankle, causing Plaintiff to suffer a severe injury.

4.     Plaintiff seeks compensatory damages for physical injury, psychological and emotional distress, and financial loss caused by Defendant's negligent acts, and such other and further relief as this Court deems equitable and just.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter of this complaint under 28 U.S.C. §§ 1331, 1346(b), 28 U.S.C. §2671, *et seq.*, Federal Tort Claims Act ("FTCA").

6.     On November 18, 2021, Plaintiff filed a claim under the FTCA demanding damages of a set sum and has satisfied the jurisdictional prerequisites.

7.     By letter dated May 3, 2022, Plaintiff's claim was denied.

8.     Venue is properly within the Middle District of Pennsylvania under 28 U.S.C. §1402(b) and 28 U.S.C. §1391(b)(2) as the acts and omissions that are the subject of this complaint occurred within this district.

## PARTIES

9.     At all times relevant herein, Plaintiff was a federal prisoner confined at FCI Schuykill, located at Interstate 81 & 901 W, Minersville, PA, and within the Middle District of Pennsylvania.

10. At all times relevant herein, Plaintiff was under the custodial, supervisory, and disciplinary authority of Defendant.

11. At all times relevant herein, Defendant the United States of America owned, controlled, maintained, managed, supervised, and operated the correctional facility FCI Schuykill in the State of Pennsylvania and is the appropriate defendant under the FTCA.

## STATEMENT OF FACTS

12. At all times relevant herein, Juan Rodriguez was incarcerated at FCI Schuylkill, Interstate 81 & 901 W, Minersville, PA 17854.

13. On March 31, 2020, at approximately 10:20 a.m., Mr. Rodriguez was working in prison food services when Correctional Officer T. Prock ("C.O. Prock"), an employee of Defendant, ordered him to transport a lock box cart to the special housing unit ("SHU").

14. The lock box cart was loaded with food trays containing meals for prisoners being held in the SHU.

15. Correctional officers, not inmates, were responsible for transporting food trays within the prison.

16. Correctional officers, including C.O. Prock, knew, or should have known, that large quantities of food trays were supposed to be transported to other areas of the prison using a food cart, not a lock box cart.

17. Correctional officers, including C.O. Prock knew, or should have known, that prison food carts, unlike lock box carts, were designed to safely move large quantities of food trays to different areas of the prison.

18. For example, food carts had handles at the rear of the cart and positioned at a proper height to enable safe maneuvering of the cart throughout the prison.

3

19.    Prison food carts also had two straight wheels and two swivel wheels to enable safe maneuvering of the cart throughout the prison.

20.    Wheels on prison food carts are designed to safely maneuver the cart over long distances and over the various types of floor surfaces existing at the prison.

21.    The height of the prison food carts was also intentionally low enough so that the person pushing the cart could see where they were going and safely maneuver the cart forward.

22.    C.O. Prock knew, or should have known, that the lock box cart he ordered Mr. Rodriguez to transport to the SHU was not designed to safely transport a large quantity of food trays to other areas of the prison.

23.    C.O. Prock knew, or should have known, that the lock box cart did not have any handles, making it dangerous to attempt to maneuver when it was loaded with food trays.

24.    C.O. Prock knew, or should have known, that the wheels on the lock box cart all spun in different directions and did not allow safe maneuvering of the cart throughout the prison.

25.    C.O. Prock knew, or should have known, that the wheels on the lock box cart did not allow safe maneuvering of the cart throughout the prison because they were not designed to be maneuvered over long distances or over the types of floor surfaces existing at the prison.

26.    C.O. Prock knew, or should have known, the height of the lock box cart did not allow the person pushing it to see where they were going, making it dangerous to attempt to maneuver the cart through the prison when it was loaded with food trays.

27.    C.O. Prock knew, or should have known, that the particular lock box cart he ordered Mr. Rodriguez to transport had defective wheels that spun erratically, making it even more dangerous to attempt to maneuver through the prison when it was loaded with food trays.

28. C.O. Prock knew, or should have known, that the job he was requiring Mr. Rodriguez to perform was additionally hazardous because Mr. Rodriguez would have to transport the unsafe lock box cart down a ramp that contained a pothole in it to reach his destination.

29. The pothole on the ramp that Mr. Rodriguez would have to use to reach the SHU had existed for at least several weeks before March 31, 2020.

30. Staff at FCI Schuylkill, including C.O. Prock, were aware of the pothole in the ramp but had taken no action to repair or report the defect or prevent the pothole from causing injury to people using the ramp.

31. Nonetheless, C.O. Prock ordered Mr. Rodriguez to transport the lock box cart loaded with food trays to the SHU.

32. Mr. Rodriguez protested C.O. Prock's order.

33. Mr. Rodriguez pointed out to C.O. Prock that the wheels on the lock box cart were defective and that it was not safe to use the lock box cart to transport the food trays to the SHU.

34. C.O. Prock insisted that Mr. Rodriguez transport the lock box cart loaded with food trays to the SHU.

35. Mr. Rodriguez was required by law to obey C.O. Prock's order.

36. If Mr. Rodriguez refused to obey C.O. Prock's order, he would have been subject to sanctions for refusing to obey an order of a staff member, which, by law, is deemed a moderate severity level prohibited act.

37. To comply with the law and avoid sanction, Mr. Rodriguez obeyed C.O. Prock's order to transport the lock box cart loaded with food trays to the SHU.

38. Mr. Rodriguez attempted to maneuver the lock box cart loaded with food trays to the SHU by grasping its corners and pushing it.

39.     Mr. Rodriguez found it difficult to maneuver the lock box cart through the prison because, unlike a food cart, it was not designed for that task.

40.     It was particularly difficult for Mr. Rodriguez to maneuver the lock box cart through the prison because: it did not have a handle; the wheels were not designed for travelling over the distance Mr. Rodriguez had to cover or over the surfaces Mr. Rodriguez encountered; and the height of the lock box cart prevented Mr. Rodriguez from clearly seeing in front of him as he pushed the cart.

41.     When Mr. Rodriguez reached the ramp with a pothole in it, he was unable to see the pothole because of the lock box cart's height.

42.     When Mr. Rodriguez attempted to maneuver the lock box cart down the ramp, the wheels on the cart began spinning erratically and in all different directions, which caused the cart to shake and move uncontrollably.

43.     Mr. Rodriguez unsuccessfully attempted to maintain control of the lock box cart and one of the wheels on the cart veered into the pothole on the ramp, causing the cart to tip over.

44.     Mr. Rodriguez was unable to get out of the way of the lock box cart as it tipped over.

45.     The lock box cart landed on Mr. Rodriguez's left ankle.

46.     Mr. Rodriguez's left ankle was broken as a result of the lock box cart falling on it.

47.     Mr. Rodriguez was provided inadequate medical care and treatment by staff at FCI Schuylkill for his broken ankle.

## CAUSE OF ACTION
### Federal Torts Claim Act - Negligence

48.     Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

49.     Defendant United States of America, through its agency the Bureau of Prisons ("BOP") and its employees, is liable to Plaintiff for negligence, having breached its duty of reasonable care to Plaintiff, a prisoner in its custody and care.

50.     The injury caused to Plaintiff's left ankle was caused by the negligence of Defendant, through its agency the BOP and its employees acting within the scope of their employment, and consisted of the following acts or omissions:

   a. Defendant forced Plaintiff to transport food trays to the SHU, a task for which he was neither trained nor required to perform;

   b. Defendant forced Plaintiff to perform the task using equipment it knew was defective, unsuitable, and unsafe, *i.e.*, using a defective lock box cart instead of a food cart;

   c. Defendant forced Plaintiff to perform the task with defective, unsuitable, and unsafe equipment even though it knew Plaintiff would have to pass through an area with a defective, dangerous, and plainly hazardous condition, *i.e.*, a ramp with a pothole;

   d. Despite its knowledge of the defective, dangerous, and plainly hazardous pothole that existed on the ramp that Plaintiff and other prisoners had to pass to perform prison tasks, Defendant allowed that condition to exist;

   e. Despite its actual and/or constructive notice that the condition existed, Defendant failed to correct the defective, dangerous, and plainly hazardous condition;

   f. Defendant unreasonably exacerbated the hazard of the defective and dangerous condition by forcing Plaintiff to use defective, unsuitable, and unsafe equipment when passing through the area with the defective and dangerous condition.

7

51.     As a result of the negligence of Defendant, Plaintiff suffered the severe injury of a broken ankle.

52.     Plaintiff's injury was exacerbated as a result of Defendant's unreasonable failure to provide him with adequate medical care.

53.     No negligence on the part of Plaintiff contributed to the injury Plaintiff suffered in any manner whatsoever.

54.     As a result of the aforementioned actions by Defendant, Plaintiff suffered the aforementioned severe injury, that resulted in Plaintiff suffering great pain in mind and body, and loss of enjoyment of life. The injury interferes with Plaintiff performing his normal activities of life and business and has caused Plaintiff loss of earning capacity and other expenses.

**WHEREFORE**, Plaintiff demands judgment against Defendant United States of America in an amount which would reasonably and properly compensate him in accordance with the laws of the Commonwealth of Pennsylvania, together with interest, and such other and further relief as this Court deems equitable and just.

Dated:  November 1, 2022
        Scranton, Pennsylvania

/s/Joseph G. Price
Joseph G. Price, Esq.
JGP & Associates
321 Pear Street
Scranton, PA 18505
(570) 955-7418

*Attorneys for Plaintiff Juan Rodriguez*